Staples, J.
It may be considered as well settled, that arbitrators, being judges of the parties’ own selection, have rightfully the power to decide and finally adjudicate the law and the facts of the case submitted to them.
They may disregard the law entirely, and decide upon principles of equity and good conscience exclusively. If, however, they mean to conform to the law, and they plainly mistake it, such mistake is sufficient to invalidate the award.
There is no controversy in regard to these principles. The real difficulty lies in determining the effect of a mistake of law made by the arbitrators, not apparent on the- face of the award or some paper incorporated with and constituting a part of it.
The question is, may such mistake be established by extrinsic evidence?
It is said by Judge Story, in 2 Eq. Jur., 1455, “If the arbitrators mean to decide strictly according to law, and they mistake it, although the mistake is made out by extrinsic evidence, that will be sufficient to set aside the award.”
In support of this proposition he cites a number of cases; which, however, do not sustain the proposition in *165 the unqualified terms thus asserted. See also 9 John. R. 263; Kyd. on Awards, 350; 3 Atk. R. 462, 492.
On the other hand there is a great weight of authority in favor of the doctrine that there must be something on the face of the award, or some paper connected with it, to show that the arbitrators have proceeded on grounds not sustainable in point of law.
The courts, however, while professing to maintain this latter rule, have in many cases of real or supposed hardships, allowed exceptions and modifications, which make it very difficult to deduce any established principles from these decisions. Thus, relief has been given where the mistake was clearly established by reference to some authentic document accompanying, though not expressly referred to in the award. See cases cited in Moore on Arbitrament and Award, 336. The reason of this exception is apparent. The rule which excludes testimony to impeach an award for mistake of law or fact, is amere rule of evidence founded upon considerations of public policy, the repose of society, and the end of litigation.
If the court, however, has before it evidence of such mistake, plain and palpable, equally authentic and satisfactory as that furnished by the award, there is no valid reason why such evidence should not be received and considered. Thus, where the order of reference is made in a pending cause, and the arbitrators have before them the pleadings and exhibits filed in the case, duly consider them, and return them to the court with their award; and if it appears from an inspection of the whole that the arbitrators have made a plain and palpable mistake of law, there can be no solid ground for refusing relief in such cases. Eo court that I am aware of, has ever held' that a mistake so made out cannot be relieved against.
*166 This case furnishes a most apt and striking illustration of the necessity and wisdom of this doctrine.
The facts briefly stated are as follows: In the year 1860 three actions of debt were instituted in the Circuit court of Rockbridge county against the appellant, by the executors of W m. Luckess, upon various bonds executed by the appellant to Luckess. The appellant pleaded payment, and filed with his plea an account of set-offs. These actions remained on the docket until the year 1866, when all the matters in litigation were referred to the decision of two arbitrators, or their umpire. When the cases came on to be heard before the arbitrators, the executor relied on the statute of limitations in bar of a large portion of appellant’s account; and he submitted to the arbitrators a written statement of his construction of the law governing the case. The arbitrators have testified it was their purpose to disallow all items of the account barred by the statute. The presumption is, they intended to do so, because the claim is against the estate of a decedent, and the statute plainly prescribes the rule in such cases.
Independently of the statements of the arbitrators and of any presumptions on the subject, it is apparent from the award itself, the, pleadings and exhibits filed in the actions at law, that the arbitrators have only intended to allow so much of the account as was not affected by the operation of the statute. The award finds for the executors all the bonds, amounting in the aggregate to $6,746 28. It then proceeds to dispose of appellant’s account of set-offs, which, in fact, was the only matter in. controversy.
It will be observed that the award does not allow a single item of the account previous to the year 1855; but, with the exception of an abatement in one charge, it does allow all the items subsequent to that period. It *167 enumerates these items, sums and dates, all corresponding, and allows interest upon each from the period charged.
This account is, therefore, as unmistakably identified by the award as if it had been, incorporated in and made a part of it. It is the identical paper filed in the actious at law, relied on before the arbitrators, and made the basis of their award.
It is equally clear that the arbitrators, in applying the statute, have mistaken the law, and allowed a large portion of defendant’s account, which ought to have been rejected. This is apparent from the award, the account, and the pleadings in the actions of debt. There is no pretence of any such promise'by Luckess, in his life time, as will remove the bar of the statute. The ground taken by the appellant, before the arbitrators, was, “that his account was a continuous debt running from the 17th of May 1845, until the death of Luckess, being based on promises and inducements held out from time to time by Luckess, to make some provision in his will for appellant;” which proved to be false; and which fact could not be ascertained until Luckess’ death.”
But, clearly, this was insufficient, and was very properly disregarded by the arbitrators. It is very clear their mistake originated in the belief that the institution of the suits by the executors, arrested the running of the statute, as to appellant’s account; whereas the period of filing that account was the proper one to be considered in fixing the time when the statute ceased to operate. Indeed it was conceded in the argument, that the arbitrators had plainly mistaken the law, in allowing those items of the account within the operation of the statute of limitations. It was said, however, they were misled by the executor, and the estate must bear the loss.
*168 It is true, as a general rule, that mere mistakes of law afford no ground of relief in courts of law or equity. This rule, however, has no application to this case.
It is impossible to maintain that a mere mistaken admission of the law by a fiduciary can revive, as against the estate he represents, a debt barred by the statute, when his express promise can have no such effect. Such an admission would not justify an arbitrator, in disregarding the law, any more than it would avail in a court of justice.
If the arbitrator intends to conform his award to the law, but fails to do so, and such mistake plainly appears, I take it the courts would grant the necessary relief in favor of infant distributees, however much the executor may have contributed to the mistake.
The next question to be considered is, as to the jurisdiction of a court of equity to grant relief in the present case.
Independently of, and prior to our statutes on the . subject, there is no question that the common law courts had the same supervision and control of awards in pending suits, and could give as extensive relief in vacating such awards, as courts of equity. Our statutes have, however, considerably restricted this jurisdiction of the common law courts. Awards cannot now be set aside in those courts, except for errors apparent on their face, unless indeed they were procured by corruption or other undue means, or for misbehavior in the arbitrators. As the mistake in this case is not apparent on the face of the award, and as no corruption or improper conduct on the part of the arbitrators has been proved, or even charged, it is difficult to see how the common law court could have afforded any relief.
This would seem to be so, even if the executor, who was the party on the record, had resisted the confirma *169 tion of the award. However this may he—and it is unnecessary to decide the point-—the executor has declined to contest the award before any court.
The question now arises, whether the distributees of the estate have any claim to relief. As a general rule I admit the distributees cannot interfere in a controversy between the executor and a debtor to the estate, unless inhere be collusion or fraud. The legatee or distributee must look to the executor for any loss or damage he may sustain.
But there are exceptions to this rule; and I think this case furnishes one of them. In the first place, it is very questionable whether these distributees would, in any event, have any remedy against the executor. Even at common law an executor or administrator was authorized to submit to arbitration demands for or against the estate; and in such case the award was binding upon the creditors, and good against legatees and distributees. If any loss was therebj7 sustained, the executor was responsible, as for a devastavit. Our statute, however, declares that an executor or administrator shall not be responsible for any loss sustained by an award, unless it was caused by his fault or negligence. It is impossible that the executor in this case can be held responsible either by reason of the nature of the award, or because of his failure to contest its validity. And yet a case of more grievous injustice has been rarely seen in a court of equity.
' Consider for a moment the facts of the case. ¥m. Luckess, an unmarried man, without family, was a hoarder in the family of the appellant for a considerable period, under a written contract plainly prescribing the terms and conditions of such boarding. This contract was regularly renewed from year to year; the stipulated compensation regularly paid, and receipts *170 punctually given. During this period the appellant became indebted to Mr. Luckess to the amount of more than $5,000, for which the latter held his bonds.
It seems that Mr. Luckess was in bad health, and required a good deal of attention. In consideration of which he, in a general way, promised or informed the appellant he should never lose any thing. Accordingly, in his will Mr. Luckess handsomely and liberally provided for the family of the appellant, in the way of legacies to his children to the amount of $14,000. After the death of Mr. Luckess the appellant was called on to pay the bonds he had executed.. Then, for the first time, he exhibited an account against the estate, amounting to the enormous sum of $10,818 00, for extra services rendered the testator. A more extraordinary claim was never exhibited in a court of justice. I will hazard the assertion that the records of no court on this continent furnish a parallel to it. Some of the items are very curious: “Extra services rendered you during the year ending 1st January 1855, $5 per day, amounting to $1,825. Services rendered boy John, who was sick of fever from July 15th to Aug. 20th, $360. Extra services from May 27th till June 4th, during last illness, $17 20 per day.” These are in keeping with the other charges. And yet all these charges, supposed not to be barred by limitation, were allowed, the entire amount of the bonds extinguished, and the estate brought in debt to the appellant more than $500.
And we are told there is no remedy against such injustice, notwithstanding the award fails to conform to the real judgment of the arbitrators, and palbably violates the law.
The executor does not choose to interfere, for reasons satisfactory to himself. And the courts of equity are to be closed against the infant heirs, whose little inherit *171 anee has thus bee3i taken, without their consent, and without the slightest misconduct or default on their part. Surely the courts will not extend the sanctity of awards so far as to permit injustice so grievous.
If awai'ds are to be considered as too sacred to be impeached at all; if, notwithstanding the most glaring mistakes have been made, every door is to be closed against the court’s interference, these domestic forums may be regarded as instruments of oppression and wrong to the estates of the deceased, rather than as convenient and proper tribunals of justice. It will be to say, that whatever injustice may be done by the palpable mistakes of arbitrators, the courts must approve or give validity to those mistakes, if the referees are cautious enough not to spread them upon the face of the award.
Fortunately, in this case, .the law maybe vindicated and the right enforced, without violating precedents or well established principles. Here, at least, law and justice go hand in hand.
The next and only remaining question to be eonside3’ed, is, whether the court may amend or correct an award, in part, and affirm it as to the residue; or whether, if any part of it is illegal, it is boimd to amend it altogether. It is now well settled, that an award may be bad in one part, and yet good and binding in another part. If the bad part is clearly separable in its nature, the residue of the award may be good. The general rule is, that the general validity is alone impaired when, by the particular defect, a mutuality of interest and advantage appearing evidently to have been intended by the arbitrators to be given, is destroyed, or when the general substance of the award and the real justice of the case are affected.
If, however, notwithstanding some part of the award may be void, the remaining part embrace a final and *172 certain determination of every question submitted, the valid portion may be maintained, though the void part be rejected. Moore 454. Thus in Aubret v Maze, 2 Bos. & Pul. R. 371, where an arbitrator directed payment to a defendant of a sum of money, as the balance of a general account, and also of another sum,, stated on the face of the award to be due to the defendant on account of illegal insurance partnership transactions between him and the plaintiff, the award was held bad, as to the latter sum only.” Russel on Awards 258.
Tested by these principles the point suggested does not present the slightest difficulty. The sum claimed by the executor is found due him by reason of the bonds executed by the appellant. About this-there is no controversy. The award then finds, not a separate or aggregate sum, but certain items of the account of the appellant, with interest thereon from the respective periods when they arose or were contracted. Such of these items as are barred by limitation may be stricken out without impairing the general validity of the award, or without interfering with any principle of mutuality which may have been contemplated by the arbitrators. The court merely does what the arbitrators themselves would have done had they been correctly advised with regard to the statutory law governing the rights of the parties.
For these reasons I think the Oircuit court was right in expunging from the award the items barred by limitation, and affirming it as to the residue.
The appellee does not complain of this proceeding, and the appellant receives all he was entitled to receive under the most favorable aspect of the case for him.
The other judges concurred in the opinion of Staples, J.
Decree aeeirmed.